May it please the court. My name is Lance Kirkwright and I represent the appellant Enrique Villegas. I have reserved five minutes of time for rebuttal. Your Honor, over the past fifteen years the Supreme Court has found on at least eight occasions that statutes of limitations are not jurisdictional rules but claim processing rules subject to equitable tolling. During the same time period the Supreme Court has not found a single statute of limitations to be jurisdictional. The statute of limitations in this case is found on page ten of our opening brief. Like the statutes considered by the Supreme Court, section 1503 lacks a clear statement from Congress establishing a jurisdictional rule and the lower court erred by ruling to the contrary. Courts apply a rebuttable presumption that time bars are not jurisdictional. The Supreme Court says that it will treat a rule as jurisdictional only if Congress clearly states that it is. In United States v. Kwai-Fung Wong, the Supreme Court said that given the harsh consequences of jurisdictional rules, the government has a high bar to establish that a rule is jurisdictional. The court said that Congress must do something special to tag a statute of limitations as jurisdictional. In Beckler v. the IRS Commissioner, the court said that it is not enough that the government have a better interpretation of the statute, rather the statutory language must be clear. Applying this clear statement test, the Supreme Court stated that most statutes of limitations are not jurisdictional. Nothing in section 1503 overcomes the high bar that the Supreme Court has erected. The statute of limitations is the first clause of a long sentence containing two other clauses. The second clause advises litigants in what district court they should file. It says that litigants must file their lawsuits in the district court where they claim a residence or where they reside. And the last clause says jurisdiction over such officials in such cases is conferred upon those courts. But there is no direct link by a clear statement linking the third clause to the first clause. The word jurisdiction in that third clause is doing something very specific and it has a limited application. And that is, it is telling the court who we should sue and who the defendant is. For example, if I was suing the government over a denial of a passport, I would have named the Secretary of State as my defendant. But since I'm suing over the certificate of a citizenship denial, I have named the Secretary of Homeland Security. That is what jurisdiction over such officials is doing in that sentence. And we believe that that is the right interpretation of the statute. But even if you think the government has a better interpretation, the interpretation that Mr. Villegas has is plausible. And that's all that we need to show to overcome the clear statement test. As Beckler said in the Supreme Court case, where multiple plausible interpretations exist, only one of which is jurisdictional, it is difficult to make the case that the jurisdictional reading is clear. That Supreme Court Beckler v. IRS Commissioner is dispositive in our favor in this case. In that case, like here, the Supreme Court was dealing with a statute that had the statute of limitations and the word jurisdiction in the same sentence. And the Supreme Court held that the mere presence of the word jurisdiction does not elevate the statute of limitations to a jurisdictional rule. Rather, the Supreme Court said that proximity is not what is important. Rather, there must be a direct link between the word jurisdiction and the statute of limitations. The court said that you should parse the statutory sentence to find the non-jurisdictional elements and the jurisdictional elements within the same sentence. So applying that Beckler rule of parsing to 1503, you'll see that the first clause says what a litigant may do. Mr. Villegas may institute a lawsuit within five years. That is a non-jurisdictional claim processing rule. The jurisdictional elements are in the third clause, which talk about jurisdiction over such officials. So I believe that that case is directly on point and directly contrary to what the lower court found in regards to the word placement of the word jurisdiction. The Immigration and Nationality Act has other provisions which use clear jurisdictional language. If you look at the Supreme Court's case in Santos-Zacaria v. Garland, 598 U.S. 411, footnote 5, the Supreme Court lists several statutes in the Immigration and Nationality Act which do use, in its opinion, clear jurisdictional language. It doesn't list USC 1503A. And this court recently recognized that another section of the code is not jurisdictional in Arcueta v. Garland, when it ruled that the 30-day deadline for filing a petition for review is not a jurisdictional rule. And this interpretation of the statute is in keeping with the Supreme Court's concern about harsh consequences of jurisdictional rules. Consider the harsh consequences of the jurisdictional rule that the government is proposing. The federal court's doors will be closed to people with very real claims to United States citizenship. U.S. citizens will not be able to get passports, certificates of citizenships, and all the other types of benefits and privileges that they are entitled to as citizens of the United States of America. That jurisdictional rule is too harsh. It deserves acclaimed processing analysis and equitable tolling, especially considering how long the agencies take to decide these things. Mr. Villegas waited years to have his decision given to him. It's conceivable, and it happens, that applicants lose track of their case. Maybe they move and the government sends their decision to the wrong address. But if they don't get that lawsuit within five years, if it's a jurisdictional rule, they're forever barred from bringing it. You can conceive situations, unfortunately, where a lawyer might be representing someone for years in a situation like this and lose track of the client. Maybe the client moves and they can't get that decision to the client. Five years later, the harsh consequence attaches. No jurisdiction in this court, even if the person has a more than color proclaimed United States citizenship. Mr. Curtright, the district court here thought itself bound by our precedent to find that the limitations period is jurisdictional. How do we go around that? I believe the district court erred on that point, Judge. No Fifth Circuit case has applied the clear statement test to the five-year statute of limitations itself. And no Fifth Circuit case has determined that the five-year statute of limitations is jurisdictional. They have come close to that ruling, but they have never addressed it on its merits. So let me go through some of those cases. Flores versus Pompeo. In this case, the court addressed the second clause of the sentence, the one that requires litigants to file in the district court where they claim a residence. And in that case, the court, in a footnote, said that it was a jurisdictional issue under a jurisdictional rule, rather, under the clear statement rule. But if you look at the second clause and the third clause, you will see a much more clear link. The jurisdiction, the third clause says, jurisdiction over such officials in such cases conferred over those courts. Those courts is clearly referencing the district courts in the second clause. There is no such direct link between the third clause and the first clause. So Flores versus Pompeo did not rule contrary to our position today. Also, when you consider Flores, consider the harsh consequences. If I filed my lawsuit in the wrong district court, I would take a dismissal order and file in the correct district court. My client would have his day before the court. But if you rule in favor of the government on this matter, the time bar is a forever bar. He'll never be able to bring it in any court. The other case that is pertinent here is Gonzalez versus Limon. And in this case, the court also did not find the statute of limitations itself was jurisdictional, nor did it apply a clear statement analysis to the statute of limitations itself. In Wilkins versus the United States— Are you saying that Gonzalez, the statement regarding jurisdiction in Gonzalez is dicta? I think it is dicta, but more than that, I think Wilkins versus the United States puts it in its proper context. The Supreme Court in Wilkins and in other Supreme Court cases has said that the word jurisdiction is used too frequently to mean things that aren't jurisdictional. That's the Supreme Court saying that, not me. And it says it does so frequently. What's important is not the use of the word jurisdiction of the decision. It's the analysis, the elaboration. And if you look at Gonzalez versus Limon, there was no analysis whatsoever of a clear statement rule. And to the extent that it did address the issue, it was not looking at the time bar itself. Rather, it was looking at a situation where the applicant can restart the statutory clock by filing another application later on. Ms. Gonzalez, she filed a motion to reconsider in 2008, and the court said that's what started the statute of limitations. But then she didn't file on time, so she filed again in 2014, a second motion to reconsider. And the court in Gonzalez was considering whether that second application restarted the statute of limitations. It did not address the time bar per se. So no Fifth Circuit case, Your Honor, has addressed this issue. Not on point. So the district court is just incorrect on that point. If you look at the decision in Gonzalez, Your Honor, it doesn't talk about the time bar, but rather talks about what is a final administrative denial. And it doesn't, I think the court should take the opportunity to clarify that that is not a jurisdictional rule, but a claim processing rule. Because it's not using the jurisdictional analysis necessary for a jurisdictional rule. Point of fact, Gonzalez said that the statute is silent on whether they can have jurisdiction over repetitive denials. Statutory silence is far from clarity, is far from a clear statement. So for Gonzalez to make sense in the world of jurisdictional versus claim processing rules, it must be a claim processing rule subject to equitable tolling. And I think you can do that under Wilkins. When they talk about jurisdictional rules, I mean, say many things, not always jurisdictional. The analysis is not there to support a jurisdictional finding. And if that's the case of Mr. Villegas, the court certainly has jurisdiction over his motion to reopen. And that brings me to the last point. Even if this court finds that the five-year statute of limitations is jurisdictional, Mr. Villegas timely filed five years after the denial of his motion to reopen. Gonzalez says that the pertinent denial is the first one, first final administrative denial. The word first is not in the statute. It's imported by case law. And for that word first to have any real meaning, it must refer to the first administrative process, not the first administrative denial. And that's because the first denial in this case was when USCIS denied Mr. Villegas's application. But we know that wasn't the denial that started the statute of limitations because this court requires exhaustion to the appellate administrative unit. So the first administrative decision doesn't start the statute of limitations. So what is the word first referring to? It is the administrative process concerns three steps. One, the denial before USCIS. Two, the appeal to the appellate unit. And then three, a timely filed motion to reopen. Mr. Villegas timely filed his motion to reopen 30 days after the appeals court or appeals administrative appeal court denied it. So when litigants or applicants avail themselves to all the regulatory remedies available to them, they're not engaged in an opportunistic filing to try to restart the statute of limitations. They're not engaged in the type of behavior that was concerned in Gonzalez. In fact, on this point, I would urge the court to compare some of the facts in Gonzalez, for example, or in Cabrenas. In Cabrenas, the applicant filed six applications for a passport over a period of 10 years. Mr. Villegas didn't do anything like that at all. He filed a motion to reopen as was allowed to him by regulatory right. And Gonzalez, again, she filed in 2008 her first motion to reconsider and her second in 2014 in an attempt to restart the filing, the statute of limitations. Now can we distinguish this case from Gonzalez to find that this case was timely filed? I think you can do it in at least the following ways. One, Gonzalez did not address whether the time bar was jurisdictional. Two, Gonzalez is a claim processing rule and that the final administrative denial is subject to equitable tolling because it's not a jurisdictional rule. And three, even under Gonzalez, the first final administrative denial was when the motion to reopen was decided. That was all in that first administrative process. Mr. Villegas got that motion denied and he timely filed within five years. That's in keeping with Gonzalez's concern over finality. The finality that they were worried about is when people engage in these duplicative filings years after they lost a case. That's not what happened to Mr. Villegas. So if you apply a rule that is the first administrative process, that finality is done at the end of that process. Thank you. Thank you. You deserve some time for rebuttal. We'll see you then. Good afternoon, Your Honors. My name is Lacey McAndrew. I'm here on behalf of the federal appellees and I am from the Western District of Texas. The decision in the lower court in this case should be affirmed really for two very clear reasons. And the first reason is that this court has already applied the clear statement test in the context of this actual statute in 1503A. And that was done in 2019 in the Flores v. Pompeo decision. It was looking at the residence requirement. And there is nothing in the language of the statute or nothing in that case that would indicate that the determination, the reasoning that the court used in that case would not also apply to the temporal limitation. And that goes right along with our decisions on sovereign immunity as it relates to the government's willingness to be sued in certain situations. And specifically, we have a decision that a statute here where Congress has said, yes, the government can be sued when it comes to this, but it has to be done with certain limitations. And that is Congress's duty to limit the scope of that judicial review. And so that's, if we're looking at both the statute of limitations as a limit to sovereign immunity, waiver of sovereign immunity, and we're also looking at Congress's clear statement that it is intended to be jurisdictional, then both of those point in favor of the government's argument. And this case should be affirmed on that basis. Other than relying on Gonzales, what case best supports your argument that 1503A's time bar is jurisdictional? Yes, Your Honor. It's the Flores v. Pompeo decision. And in that case, that's where the Fifth Circuit went and looked directly at the residency requirement. I'm sorry? What was the name of the case? Flores, F-L-O-R-E-S. And that was a 2019 decision, Your Honor. It's 936 Fed Third 273. And specifically, there's a footnote at page 276, it's note 2, where the Fifth Circuit goes into an analysis there and indicates that Congress clearly stated that 1503A's residence requirement is jurisdictional. By appending the clause, jurisdiction over such officials in such cases is conferred upon the courts. Mr. Villegas' argument is that there is no indication that the time bar, however, is related to that jurisdictional clause. But that case itself confined itself to the residence requirement, not a time bar, correct? Yes. That Flores decision is related specifically to the residency requirement. We do have, however, now three district court decisions within the Fifth Circuit where the courts have looked at 1503A with specifically looking at the statute of limitations, the temporal limitations, and decided that when you take the decision from Gonzales and you take the Flores decision and you put them together, it's very clear from looking at that as a whole that the intent of Congress was to clearly make that jurisdictional. Do those district court decisions post-date or pre-date the Supreme Court's recent sort of turn towards the clear statement rule? They post-date those, Your Honor. In fact, the two that I'm specifically referring to are out of the Southern District of Texas. One of them is actually on appeal, I believe, here and was filed, I think, in January. So I believe there's a notice of related case in that one and that came out in January of 2025. Yes, it did rely also on the decision out of the Western District of Texas in this case, but the court did a very in-depth analysis on 1503A as it relates to the statute of limitations there and indicated that it was clear not only from the context of the statute when read as a whole, that it was clearly intended to be jurisdictional, but also that the prior precedent from the Fifth Circuit indicating that this is a jurisdictional bar was not just done flippantly. It was done because it was considered to have been a clear statement from Congress. And so that's the difference. These cases we've been getting recently out of the Supreme Court, they're really focused more on the skepticism of the jurisdictional nature of procedural bars, but in a case like this where it's really going directly towards the United States' sovereign immunity, that does not apply. It does not extend to the United States' sovereign immunity, and there's a good discussion of this specifically in Justice Thomas' dissent in Wilkins where he's going through at page 166 and discussing the differences when it relates to sovereign immunity because waivers of sovereign immunity and any conditions on those waivers have to be also clearly stated. And so while on the one hand we have to have clear statement of the jurisdictional nature of something, we also have to have the clear statement that the United States is waiving its sovereign immunity here. And here we have a clear statement that yes, the United States will waive its sovereign immunity to be sued under this statute, but only if it's done within five years and only if it's filed in the district court where the person resides. And that's in the same clause, the same sentence as the word jurisdiction. The court put jurisdiction into the statute. All of that is in one clause, one section of the statute. So when the entire statute, 1503A, is read as a whole, there is no ambiguity. It is very clear who can be sued, who must be named as the defendant, and that it must be a final agency action, and that it must be filed within five years and in the district where they reside. And when you're looking at that, that also goes to the second point, which is that the statute of limitations is going to run from the first administrative, the first final administrative denial. And here, in that case, again, that's showing Congress's interest in the finality of these decisions. And when we are looking at the very first final agency decision, that marks the consummation of the agency's decision-making process. And then it also . . . Very, very well. Excuse me, sir? Have you mentioned a case other than Gonzales that demonstrates that a Palm's case is untimely? Within . . . yes, sir. The Flores-Pompeo decision . . . What's that? The Flores-Pompeo versus Pompeo decision from 2019, that one plus the Gonzales case taken together should be read to show that this is time-barred. And when we look at the actual regulations involved here, we have a situation here that is different than the situation in Cambrannus. Cambrannus was the other decision from 2021 with this court. And in that case, it was the same statute at issue. It was a different defendant. So it was a passport application as opposed to an N-600. So in that Cambrannus decision, we have . . . in the Cambrannus . . . Cambretti? In the Cambrannus decision, the court went through the analysis to show final agency action, to show when they're . . . it's going to mark the consummation of the agency's decision-making process, and it's also going to allow legal consequences to flow from that. And so here, that was done in the . . . that Cambrannus decision was in the context of passports where there is no administrative review. But here, in this context, there is administrative review. So it's going to be triggered from the first final decision that is reviewing the denied N-600 here. And actually, Mr. Villegas concedes the point that the Administrative Appeals Office decision in this case, which came February 2018, that that was sufficient to trigger 1503A jurisdiction. He concedes that in his briefing. And if that is true, then the only interpretation from there is that that is the triggering decision because it is a final decision and he could have, at that time, gone to district court immediately under 1503A. And so that's where we have to run that statute of limitations from that point. And that's what the Cambrannus decision says from 2021 that . . . and Gonzalez . . . that we are not going to allow follow-on denials to reset that time frame. And yes, the government does not disagree that the motion to reopen that was filed here with Mr. Villegas resulted in a final agency decision, a final agency action. It did. It just did not result in the first final agency action. And so when we are looking at our own precedent here where we have Gonzalez-Cambrannus and it is taking us back to the first final agency action, and that's what triggered the statute of limitations in this case and what makes this case untimely. And because of that, the United States' sovereign immunity is preserved in that regard. And there is no equitable tolling to come from that because it is a jurisdictional . . . it's a jurisdictional bar. And yes, there are harsh consequences, as Mr. Villegas' counsel has indicated, but even in the cases where the courts look at equitable tolling and look at harsh consequences that result from someone missing a deadline, that lack of due diligence to file on time is not something that is generally considered to be worth tolling the time frame. And here, we don't have a situation where Mr. Villegas, you know, attempted to litigate this before the five years and for whatever reason, by mistake, you know, faced impediments to that. We don't have that. He did not file under 1503A until after the five-year period. That would be determined by the courts, at least under the Fifth Circuit's precedent, to not have been something that would toll the deadline. And again, that's something that the District Court in the Southern District of Texas went through in its analysis in the 2025 decision, is going through that even if equitable tolling were available here, which it's not, it would not apply in the situation or it would not be applied in the situation where the applicant just did not pursue their right to file in federal court. And so, specifically here, just to be sure that we cover the bases, because we don't have to go through the equitable tolling analysis here, the court can stop the analysis at that point. However, if the court were to go even further on this, Mr. Villegas' argument is that he should be tolled because he had two different decisions, two different decisions qualitatively different decisions. But again, that language is not based in any precedent within the Fifth Circuit. The Fifth Circuit, that language came from a decision out of circuit that the Fifth Circuit did look at in the Gonzalez decision, and it's the Henry case from 2010, I believe. And that talked about the qualitatively different decisions. And so, the Fifth Circuit could have, at that time, carved out an exception and gone through an analysis on equitable tolling, but they did not. And so, again, that's another indication going back to the fact that this is a jurisdictional requirement that protects the United States sovereign immunity. And again, it's important to understand that this does not leave Mr. Villegas without a remedy. He can continue in perpetuity to file applications for this benefit with USCIS if he gets new evidence. He can continue to do that not only at the USCIS level, he can do that with the Department of State to seek a passport. And as we've seen in Cambranas, he can do that repeatedly if he finds additional evidence. His argument is that he didn't have the benefit of having his father testify in his case with USCIS, but again, he can file these things in perpetuity. And if it's not DHS, he can do it with the State Department. And again, also on that issue, there really was no—Mr. Villegas has misunderstood the regulations as it applies to whether or not his father should have been permitted to be interviewed. The regulation that Mr. Villegas relies on in the briefing is actually for minor children, and so there is no similar regulation for adult children to have their parent interviewed by the agency. And so even if he wanted to go back and do the passport application or do the N-600 motion to reopen, there's always only one process for the N-600. You cannot file duplicative N-600s. So the argument that this is the first administrative process is not supported by the regulations. If an N-600 is filed—if a subsequent N-600 is filed, it's going to get rejected by USCIS, and then it can be considered in the exercise of discretion as a motion to reopen, even if it's untimely. But that has to be done with proof that the N-600 rejection notice has been received, and then it goes from there. So finally, also, if Mr. Villegas were to be placed into removal proceedings, for example, he would also have an opportunity to make his claim in front of the immigration judge to argue that he is not removable from the United States because of his claim to U.S. citizenship. He has that right to make that decision. The immigration judge, however, of course, cannot bestow proof of citizenship on him. However, if the immigration judge rules that he is, in fact, an alien and not a U.S. citizen, Mr. Villegas would be able to get that reviewed at the Board of Immigration Appeals. And if he were to be unsuccessful at the Board of Immigration Appeals, he could then go back here to the Fifth Circuit. And if the Fifth Circuit is convinced at that point that he may have sufficient evidence to prove citizenship, then there are mechanisms in the INA that would allow the court to refer the case to the district court to make that determination on a factual level. And the regulator—it's a different statute, so that goes to 1252, but it's a very similar process. And so we have situations like that where the person gets, you know, all the way to that level, and then the Fifth Circuit says, you know what, I think now we want to consider this, but we want to have the district court consider it. That's different than 1503A. That's an entirely different statute. So again, this is not the end of the road for Mr. Villegas. He can continue through multiple mechanisms to try to get proof of his U.S. citizenship if he believes that that is what he has. The issue is that he just can't have judicial review under 1503 in this court, or in the district court, because he waited too long. He waited a few months after the five years, and that is not something that he can resolve through equitable tolling arguments. If there's nothing else, thank you. With respect to opposing counsel, I don't think she provided you a clear statement from that statute one time, and that's because there is not a single clear statement in that statute that suggests that that statute of limitations is a jurisdictional rule. Going to Flores, again, Beckler v. IRS Commissioner puts that case in its proper place. You're required to parse those statutes, and once you do so, you'll find that the statute of limitations is a non-jurisdictional rule. Counsel talked about the waiver of sovereign immunity at some length. The Supreme Court has found since 1990 that the waiver of sovereign immunity has nothing to do with whether this is a jurisdictional rule or not. That case is called Irwin v. Department of Veteran Affairs. It's 498 U.S. 89, and what Irwin says is that once the court finds that there's a waiver of sovereign immunity, the jurisdictional analysis applies just as it would if the people were private entities, and the Supreme Court has affirmed that at least twice, once in United States v. Kwai-Fung Wong, where the court was confronted with the Federal Torts Claim Act and its waiver of sovereign immunity, and the court in that case said that the waiver of sovereign immunity did not somehow elevate the statute of limitations into a jurisdictional rule, but in fact found that the waiver, that the statute of limitations in the Federal Torts Claim Act was not jurisdictional. Just two years ago, in Wilkins v. The United States, the case that she cites, but she cites the dissent, the majority in the Supreme Court said that the waiver of sovereign immunity had nothing to do with whether the statute of limitations was jurisdictional or not. So, the sovereign immunity waiver is there, but it's not affecting whether the statute of limitations is jurisdictional or not. Counsel talked about Cabranes. That case doesn't support her position either. Cabranes was a case where the court found under the APA, or rather the court found that the Administrative Procedures Act was not available to a litigant because 1503 was a sufficient remedy for Mr. Cabranes. There was some discussion about how the administrative appeals could have started the clock and how that might be somehow contradicting our position that the first administrative process starts the clock. Well, the first administrative process ends with an appeal or motion to reopen. If there's no motion to reopen timely filed within 30 days, well then the appeal is what starts the clock. I don't think that's contradictory, especially when the court applies the first administrative process rule. And then just lastly, on this note that Mr. Villegas can go back and file again and again in front of USCIS, well, maybe he can under the regulations, but the remedy is here in front of the federal court. Because as she said, they're not going to let his father testify. My father's, my father was a migrant, my client's father, rather, was a migrant farm worker and he doesn't have a lot of documentary evidence showing where he was. All we want to do is to bring him in to a courthouse to allow him to be seen and heard. And I don't think that the statute of limitations prohibits him from doing that. And if it does, it's that type of harsh consequence that the Supreme Court has said repeatedly that you should reject. Thank you. I do have a question. Can you give us some guidance on what is a follow-on denial versus the first administrative denial? I'd like for you to address the government's argument. What is a follow-on? Yes. Well, there's a couple examples. One would be in Gonzales. So in Gonzales, the applicant there, she had her certificate of citizenship revoked and then she filed a motion reconsider in 2008. So that was the denial-denial, according to Gonzales. The follow-on denial was in 2014, six years later, when she filed a second motion to reconsider. If Mr. Villegas went and filed another N-600 right now, that would be a follow-on denial. It's somewhat of a construct made by the court. But it's not 100% clear what a follow-on denial is. And that's partly because the word first is confusing in this situation. The word first doesn't mean the same in every regulation orbit surrounding claims to citizenship. As Ms. McAndrew noted, there's no administrative appeal for a passport denial, for example, but there is here. So when you're looking at these cases, identifying what is the final administrative denial is going to have to look at the regulations that are governing it. And I would suggest the best way for the court to handle this in this case, in every case going forward, is to say it's the first administrative process, and that includes a timely file motion to reopen. Thank you. Thank you. Arguments have been submitted. Our last case scheduled for O…